UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re:

                                                                                                       Case No. 8-19-77710-reg

Steven Kamhi,

                                                                                                          Chapter 7

                            Debtor.

------------------------------------------------------------------x
Fred Goodstein
and Michele Goodstein,

                            Plaintiffs,                Adv Proc. No. 8-20-08027-reg

v.

Steven Kamhi,

                            Defendant.
------------------------------------------------------------------x

## DECISION AFTER TRIAL

In this adversary proceeding, Fred Goodstein and Michel Goodstein (the "Plaintiffs") seek to have a judgment debt owed by Steven Kamhi (the "Debtor" or "Defendant") in the amount of $329,722.96 deemed non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(4). The judgment was entered against the Debtor prepetition after the Debtor defaulted in a state court proceeding commenced by the Plaintiffs. In establishing its case, the Plaintiffs relied in part on the state court judgment for fraud, conversion and unjust enrichment. While the Defendant alleges that collateral estoppel does not apply if a judgment is entered by default due to a defendant's failure to respond to a complaint, the Court disagrees. Under the Second Circuit authority of *Evans v. Ottimo*, 469 F.3d 278, 282-83 (2d Cir. 2006), collateral estoppel applies in bankruptcy cases to foreclose relitigation of issues decided in a prior action, even if the judgment was obtained by default. Because the underlying judgment was based on fraud on the part of the

Debtor in inducing the Plaintiffs to make a loan, the judgment debt is non-dischargeable under § 523(a)(2)(A).  There is nothing in this case which would warrant deviating from the practice in this Circuit regarding collateral estoppel and its application in bankruptcy cases.

Even if collateral estoppel did not apply, the evidence adduced at trial is sufficient to find in favor of Fred Goodstein with respect to the cause of action under § 523(a)(2)(A).  The testimony and exhibits establish that the judgment debt is non-dischargeable under § 523(a)(2)(A) based on fraud and false pretenses.  The Debtor made false representations to induce the Plaintiffs to make a loan, and then misapplied the loan proceeds.  In addition to these findings, a portion of the judgment debt equal to the amount of the original loan is non-dischargeable under § 523(a)(4).  The record conclusively establishes that the Debtor committed fraud or defalcation while acting in a fiduciary capacity.  While the Debtor was a managing member of the same limited liability company as the Plaintiffs, the proceeds of the loan made by the Plaintiffs were transferred to another company in which the Debtor was a member.  Therefore, the funds were not used for the purposes stated in the operating agreement between, *inter alia*, the Debtor and the Plaintiffs.

## Procedural History

On November 12, 2019, the Debtor filed a petition for relief under Chapter 7.  On February 18, 2020, the Plaintiff filed the instant adversary proceeding.  On April 2, 2020, the Defendant filed an answer to the complaint. On August 24, 2021, the Plaintiffs and the Defendant each filed pretrial briefs.  On August 31, 2021, a trial was held. At the trial, Fred Goodstein and the Defendant testified.  On October 15, 2021, the Plaintiffs and the Defendant each filed post trial submissions.  Thereafter, the matter was marked submitted.

## Facts

The following is taken from the joint statement of facts included in the Joint Pretrial Memorandum [ECF No. 22], the exhibits admitted at trial and the trial testimony. On December 1, 2008, the Defendant and his uncle, Maurice Enbar, formed 2457 8th LLC (the "LLC") for the stated purposes of owning and managing real property located at 2457 8th Avenue, New York (the "Property"). The LLC was a New York limited liability corporation. The Defendant was a managing member of the LLC. The Property was a two-story structure owned by a church that the Defendant and Mr. Enbar intended to buy and convert into apartments. The Defendant approached Mr. Goodstein, who was the father of the Defendant's then-girlfriend, about investing in the LLC. According Mr. Goodstein's trial testimony, the Defendant represented that the funds would be used for renovating and converting the Property into apartments. (Goodstein Trial Tr., 17).[1] The Defendant further advised Mr. Goodstein that his total return on the $150,000 loan would be $196,500. The profits would be derived from the operations of the LLC which would own and manage the Property. (Defendant Trial Tr., 26).

The Plaintiffs agreed to invest in the project and the following documents were executed by the parties:

1) A note ("Note") dated December 10, 2008 between the LLC and the Plaintiffs in the amount of $150,000, with interest at 18.67% per annum. (Pl. Ex. 2). The Defendant and Maurice Enbar executed the Note as managing members of the LLC.
2) A guaranty ("Guaranty") of the Note dated December 10, 2008 by the Defendant in favor of the Plaintiffs. (Pl. Ex. 4).

---

[1] The trial took place on one day but generated two different transcripts because Mr. Goodstein's testimony was taken and recorded via Zoom and the Defendant provided testimony in-person.

3) An operating agreement ("Operating Agreement") for the LLC dated as of December 20, 2008 and executed by the Defendant, Maurice Enbar and the Plaintiffs. (Pl. Ex. 1).

The Operating Agreement states that the Plaintiffs would receive a 5% interest in the LLC to induce them to provide the $150,000 loan, and that the purpose of the LLC was to own and operate the Property. The Operating Agreement also provides that upon repayment of the Note in full within 18 months of the date of the Operating Agreement, the 5% interest in the LLC held by the Plaintiffs would be transferred, presumably to the managing members. The Note provides that the LLC would repay the loan in seventeen consecutive monthly payments of interest only in the amount of $1500 each, followed by one final installment of principal and the remaining interest owed in the total amount of $166,500.

The bank records for the LLC reflect that the Plaintiffs' check in the amount of $150,000 was deposited into the LLC's account on December 15, 2008. (Pl. Ex. 4). These bank records also reflect a transfer from the LLC's bank account by check in the amount of $145,000, into the account of Flatiron Equities LLC ("Flatiron Equities") on December 19, 2008. (Pl. Ex. 5). Flatiron Equities was an LLC owned by the Defendant and Mr. Enbar. Fifteen of the seventeen monthly interest payments required under the Note were made to the Plaintiffs. The payments were made to the Plaintiffs by check from Flatiron Equities or by personal check of the Defendant. The last two payments were due in April and May, 2010 and were never made. (Goodstein Trial Tr., 79).

On May 15, 2013, the Plaintiffs commenced a civil action against the Defendant in the Supreme Court of New York, Nassau County (the "State Court Action"). The complaint from the State Court Action recites that the Defendant solicited the Plaintiffs for a loan and

represented that the loan proceeds were to be used for the purposes of renovating the Property. (Complaint, Ex. A). According to the complaint in the State Court Action, a bank account for the LLC was created to process the Plaintiffs' check in the amount of $150,000. Within days of the deposit into the LLC bank account, the bulk of the funds were transferred to a separate bank account for Flatiron Equities. Shortly thereafter, these funds were deposited into the accounts of, *inter alia*, the Defendant and Mr. Enbar. The Defendant and others including Mr. Enbar depleted the funds provided by the Plaintiffs and used them for their own personal purposes. (Complaint, Ex. A). The complaint for the State Court Action includes a request for entry of judgment against the Defendant and other parties in the amount of not less than $250,000 based on conversion, fraud and unjust enrichment. (Complaint, Ex.A). The Defendant failed to file an answer in the State Court Action and judgment by default was entered against the Defendant and others in the amount of $329,722.96 on March 18, 2014 on each cause of action.

At the trial on this matter, Fred Goodstein and the Defendant testified. Fred Goodstein testified that in addition to the Defendant's verbal representations, he relied on other representations in the Operating Agreement in deciding to make the loan, including the requirement that the LLC maintain books and records regarding capital contributions and accounts. (Goodstein Trial Tr., 46-47). According to Fred Goodstein, he was misled regarding how the loan proceeds were to be used and it came as a surprise to him that the bulk of the proceeds were transferred out of the capital account of the LLC and into an LLC owned by the Defendant and Mr. Enbar. (Goodstsein Trial Tr., 137). Goodstein asserts that he did not discover that the loan he made was for renovations that never took place until his attorneys investigated the reasons for the default under the Note. (Goodstein Trial Tr., 21-22). Mrs. Goodstein did not testify at trial.

The Defendant testified as well, and he denied that he managed properties for Flatiron Equities but admitted that he was a founding member of Flatiron Equities in 2003. (Trial Tr. of Defendant at p. 8). The Defendant also testified that Flatiron Equities never owned any real property. The Defendant stated that his general role was as an investor in properties that either the Defendant or Mr. Enbar identified as worthy of renovating. According to the Defendant, he was asked by Mr. Enbar to obtain funding for the purchase of the Property which would be renovated into apartments. The purpose of the Plaintiffs' investment was to fund the LLC and to obtain a construction loan. The construction loan proceeds would then be used to make the final balloon payment under the Note. (Defendant Trial Tr., 38). This did not correspond with what the Plaintiffs were advised, nor did it correspond with what occurred. The Defendant acknowledged at trial that the Plaintiffs were led to believe that the funds to repay the Plaintiffs were to come from the income earned on the project itself. (Defendant Trial Tr., 39). The Defendant claims that at some point in 2010 he realized that the Property would not be acquired by Iron Equities or the LLC. (Defendant Trial Tr., 33).

The flow of the loan proceeds from the Plaintiffs as set forth in the State Court Complaint is supported by the testimony and exhibits introduced at trial. (Pl. Ex. 5, 6; Trial Tr. 62-67). The documentary evidence and the testimony indicate that $145,000 of the loan proceeds were transferred from the LLC to Flatiron Equities within days of the initial transfer. (Pl. Ex. 5). A few days later, $135,000 of the $145,000 was transferred from the Flatiron Equities account to a bank account for 23-123rd Street LLC. (Pl. Ex. 6). The Defendant acknowledged that he was a member of 12-123rd Street LLC. (Defendant Trial Tr., 15). Virtually none of the loan proceeds were used for their intended purpose as set forth in the Operating Agreement. The Defendant admitted he failed to advise the Plaintiffs that none of the Defendant's personal funds were

invested in the Property. (Defendant Trial Tr., 28). With respect to repayment of the loan, Mr. Goodstein testified that he received monthly payments of $1,500 either via checks from the bank account of the Defendant or Flatiron Equities. (Trial Tr., 77). On occasion, some of the checks issued by Flatiron Equities were dishonored and according to Mr. Goodstein, the Defendant would ask him to bear with him. At one point, the Defendant represented that the delay in repayment was caused by problems with the elevator at the Property. (Trial Tr., 78). By the beginning of 2010, the monthly payments were made by the Defendant personally. (Defendant Trial Tr., 37).

## Discussion

I.  Section 523(a)(2)(A)

The first cause of action seeks to render the judgment debt owed by the Defendant non-dischargeable pursuant to § 523(a)(2)(A). Debts excepted from discharge under this subsection include debts:

(2) for money, property, services, or an extension, renewal, or refinancing of <u>credit</u>, to the extent obtained by—
    (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A).

Before considering this cause of action, the degree to which collateral estoppel applies to this cause of action must be examined.

    a. Collateral Estoppel

In this case, collateral estoppel has been invoked by the Plaintiffs in support of their case. While testimony and exhibits at trial support this cause of action, the Plaintiffs also rely on the findings in the State Court Action. The Plaintiffs and the Defendants disagree regarding the

application of collateral estoppel to this adversary proceeding. According to the Defendant, the State Court judgment has no preclusive effect with respect to this cause of action. The Defendant asserts that the majority of federal courts find that collateral estoppel cannot be used if the underlying judgment was obtained by default, citing to Second Circuit case law. *E.g.*, *Mishkin v. Gurian* (*In re Adler, Coleman Clearing Corp.*), 205 Fed. Appx. 856, 857 (2d Cir. 2006); *Abrams v. Interco, Inc.*, 719 F.2d 23, 34 n.9 (2d Cir. 1983). The Defendant also asserts that even if the law of New York state regarding collateral estoppel governs, case law is not uniform in finding that collateral estoppel applies to judgments by default, citing to *Vyshedsky v. Soliman* (*In re Soliman)*, 515 B.R. 179 (Bankr. S.D.N.Y. 2014). In *Vyshedsky v. Soliman*, Judge Glenn called into question whether the Court of Appeals for the Second Circuit correctly held in *Evans v. Ottimo*, 469 F.3d at 282-83, that New York courts give collateral estoppel effect to default judgments.

The Plaintiffs assert that New York law, not federal law, applies regarding collateral estoppel, citing to *Evans* and *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). The Plaintiffs rely on the Second Circuit's reasoning in *Evans* that a state court judgment obtained by default has the same preclusive effect as a judgment obtained after participation by the defendant.

As for whether New York law or federal law applies, the Court of Appeals for the Second Circuit has made clear that New York law applies. *New York v. Sokol (In re Sokol),* 113 F.3d 303, 306 (2d Cir.1997). Notwithstanding Judge Glenn's critique, this Court is bound to follow *Evans* in which the Second Circuit held that collateral estoppel applies to preclude re-litigating the issue of fraud even if the state court judgment was entered upon the debtor's default. 469 F.3d at 283. For collateral estoppel to apply the Court must find that "(1) the identical issue

necessarily was decided in the prior action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Id*. at 281.  In this case, the burden is on the Plaintiffs to establish the identity of issues and the burden is on the Defendant to prove that he did not have a full and fair opportunity to litigate fraud in the prior action.  *Id*. at 281-82.

1. Identity of Issue Decided

The Plaintiffs must establish that the judgment entered in the State Court Action necessarily decided the identical issue of actual fraud as required by § 523(a)(2)(A). The complaint in the State Court Action states that when the Defendant solicited the Plaintiffs for the loan, the Defendant led them to believe that the LLC already owned the Property when in fact the Property was owned by a third party, and this representation formed the basis of the Plaintiffs' decision to loan the money.  (Pl. Ex. 10).  The false representations by the Defendant coupled with the misapplication of the loan proceeds formed the basis of the fraud claim in the State Court Action. As the Second Circuit has held, "[t]he elements of actual fraud under [the] Bankruptcy Code incorporate the general common law of torts and … include a false representation, scienter, reliance, and harm." *Evans*, 469 F.3d at 283 (citing Rest. (Second) of Torts § 525 and *Field v. Mans*, 516 U.S. 59, 70 n.9 (1995).  The standard of proof under New York law is clear and convincing evidence, which is higher than the preponderance of evidence required under a section 523 claim.  *Id.* Therefore, a finding of fraud in a New York state court action will satisfy the elements of fraud under § 523(a)(2)(A).

2. Full and Fair Opportunity to Litigate

Next, the Defendant must have had a full and fair opportunity to litigate the issue of fraud in the State Court Action. The Defendant acknowledges that the Second Circuit has ruled that even in the case of a "pure" default, where the debtor did not answer or participate in the underlying state court proceeding in any way, the debtor still had a full and fair opportunity to litigate the underlying issues. *Evans*, at 282. So long as the Defendant does not dispute that he was properly served in the State Court Action and was afforded the "opportunity" to contest the fraud allegations, this is sufficient as a matter of Second Circuit law. *Id*. This result is based on *Kelleran v. Andrijevic*, 825 F.2d 692, 694 (2d Cir. 1987) in which the Second Circuit made clear that a judgment entered upon default in a state court proceeding is binding upon the bankruptcy court, unless the judgment "was procured by collusion or fraud, or where the rendering court lacked jurisdiction."

The Defendant is not claiming that the judgment in the State Court Action was defective in some way but asserts that his failure to answer or participate in the State Court Action bars the application of collateral estoppel. The case law upon which the Defendant relies adds some complexity to the straightforward analysis set forth in *Evans*, but the nuances needed to depart from *Evans* are missing in this case. First, the Court agrees with the Court of Appeals of New York that collateral estoppel should not be rigidly applied and "general notions of fairness involving a practical inquiry into the realities of the litigation" can be taken into consideration. *Halyalkar v. Board of Regents of State of N.Y.,* 72 N.Y.2d 261, 268–69, 532 N.Y.S.2d 85, 527 N.E.2d 1222 (1988) (citations omitted) (declining to give collateral estoppel effect to earlier consent order pleading guilty in New Jersey medical board disciplinary proceeding in subsequent New York medical license suspension proceeding). Other policy considerations may dissuade a court from applying collateral estoppel in a rigid or mechanical way, as in *Kaufman v. Eli Lilly &*

*Co.,* 65 N.Y.2d 449, 456, 492 N.Y.S.2d 584, 482 N.E.2d 63 (1985).  In that case involving DES litigation, where a theory of liability was not challenged by the defendant in an earlier case, the plaintiff in a subsequent case could not seek to use this finding against the defendant.  Due to the importance of establishing and developing law in this relatively new area of mass tort liability, collateral estoppel did not bar the defendant from litigating this theory.

This case does not present special facts which would warrant deviating from *Evans* and *Kelleran*.  The cause of action in the State Court Action was common-law fraud, and the Defendant is not arguing that he consented to something in the State Court Action that had unintended consequences in this proceeding.  The causes of action in the State Court Action for fraud and this action under § 523(a)(2)(A) are identical as a matter of law.  Therefore, collateral estoppel will be applied in favor of the Plaintiff on this cause of action.

    b.  Record at Trial

Even if the Court were to decline to apply collateral estoppel to this cause of action, the testimony elicited at the trial is sufficient to find that the judgment debt owed to Fred Goodstein is non-dischargeable.  He testified that he invested in the LLC based on the Defendant's verbal representation that Flatiron Equities owned the Property and it would be transferred to the LLC as well as the representations contained in the Operating Agreement that the purpose of the LLC was to own and manage the Property.  These representations were false.  The Defendant acknowledged in his testimony that he failed to disclose that the Property was owned by a third party unrelated to the Defendant and that the approval of the Attorney General for New York was required prior to any purchase by either Flatiron Equities or the LLC.  The Defendant also failed to use the loan proceeds for the renovation of the Property, which was contrary to the representations made to the Plaintiffs.

This testimony and documentary evidence is sufficient to establish that the debt is non-dischargeable under § 523(a)(2)(A). This statute sets out the three types of fraud; false pretenses, false representation, and actual fraud. Each type of fraud has a specific meaning and only one type needs be satisfied to render a debt non-dischargeable. *Husky Intern. Electronics, Inc. v. Ritz*, 578 U.S. 356, 360 (2016). In this case, the record supports a finding that the Defendant intentionally misrepresented the true nature of the Defendant's interest in the Property and how the loan proceeds would be applied. Fred Goodstein relied on these misrepresentations when agreeing to make the loan. While the Defendant posits that the Plaintiffs failed to even make a cursory investigation as to whether the Property was owned by the LLC or Iron Equities, there is no legal requirement that they undertake such investigation. A plaintiff may not "blindly [rely] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *Field v. Mans*, 516 U.S. 59, 71 (1995). However, a creditor generally has no initial duty to investigate under the standard of justifiable reliance. *In re Scialdone*, 533 B.R. 53, 61 (Bankr. S.D.N.Y. 2015). Such duty would only usually arise once the creditor receives an indication of deception. *Id*. In this case, Fred Goodstein's reliance on the Debtor's misrepresentations was justifiable. There is nothing in the record to suggest that Fred Goodstein should have been aware that the Defendant was not telling the truth, or that Fred Goodstein overlooked something that would have tipped him off that the Defendant misrepresented the facts.

With respect to the remaining elements, the Defendant alleges that he had no intent to defraud the Plaintiffs because he intended to repay the obligation when the loan was made. However, the Defendant's belief that the loan could be repaid does not nullify the Defendant's intentional misrepresentation of the true facts to induce the Plaintiffs to make the loan. When

questioned at trial, the Defendant had no explanation regarding his failure to disclose that the Property was in fact owned by a third party unrelated to the Defendant.  The Defendant also admitted that the Operating Agreement did not give the managing members the authority to transfer the proceeds of the Plaintiffs' loan to another entity. (Defendant Trial Tr., 49).  Finally, the Defendant admitted that very little of the loan proceeds went towards the renovation of the Property. (Defendant Trial Tr., 54).   While it is not uncommon for related entities to transfer funds between them as needed in connection with real property development projects, the Plaintiffs were never privy to this arrangement between the LLC and other related entities.  The Plaintiffs were led to believe that the loan proceeds were to be used solely for renovating the Property.

The Defendant's conduct satisfies the elements of false pretenses and false representations along with actual fraud.[2]  The Defendant made false and/or misleading statements, which created an incorrect impression that the loan proceeds were to be used for renovating the Property.  None of this was true but it formed the basis for the Plaintiffs' agreement to enter into the transaction.   Therefore, even absent reliance on the State Court Decision, the debt owed to Fred Goodstein is non-dischargeable based on the testimony and evidence presented at trial under § 523(a)(2)(A).

---

[2] **Error! Main Document Only.** The elements necessary to satisfy a claim for false pretenses include, "(1) an implied misrepresentation or conduct by the defendants; (2) promoted knowingly and willingly by the defendants; (3) creating a contrived and misleading understanding of the transaction on the part of the plaintiffs; (4) which wrongfully induced the plaintiffs to advance money, property or credit to the defendant." *In re Hambley*, 329 B.R. 382, 396 (Bankr. E.D.N.Y. 2005).

The elements of a false representation cause of action are: "(1) the defendant made a false or misleading statement (2) with intent to deceive (3) in order for the plaintiff to turn over money or property to the defendant." *Frishberg v. Janac* (*In re Janac*), 407 B.R. 540, 552 (Bankr. S.D.N.Y. 2009).

II.     Section 523(a)(4)

Debts excepted from discharge under this subsection include debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."   11 U.S.C. § 523(a)(4).  Neither the complaint nor the judgment in the State Court Action address the Defendant's liability as a fiduciary of the Plaintiffs.  Therefore, reliance solely on the record in the State Court Action is insufficient to find in favor of the Plaintiffs on this cause of action.  What can be applied based on collateral estoppel is the finding of the Defendant's fraud and conversion in the State Court Action.  For the same reasons as set forth in Part I above, the Defendant cannot challenge that he and the other defendants in the State Court Action used the funds belonging to the LLC for their own personal purposes unrelated to the LLC or the Property.  (Complaint, Ex. A).

The Defendant attempts to deflect from these findings by asserting that the Plaintiffs cannot establish that the misconduct, if any, occurred after the fiduciary relationship existed.  First, to sustain a cause of action for fraud or defalcation under § 523(a)(4), the plaintiff must establish that the debtor's conduct occurred while acting in a fiduciary capacity. *Zohlman v. Zoldan*, 226 B.R. 767, 772 (S.D.N.Y. 1998).  A fiduciary relationship is defined narrowly and includes "technical" or "express" trusts.  *In re Hayes*, 183 F.3d 162, 167 (2d Cir. 1999).  It also includes certain relationships such as one between an attorney and client.  *Id*. To determine whether the requisite relationship exists, we look to New York law.  *Zohlman v. Zoldan*, 226 B.R. at 773. The Defendant acknowledges that under New York's Limited Liability Company Law, a managing member of a limited liability company is charged with "the same fiduciary standard [that applies] to corporate directors." *In re Die Fliedermaus LLC*, 323 B.R. 101, 110 (Bankr. S.D.N.Y. 2005) (citing 16 *N.Y. Jur. Business Relationships* §2107). Therefore, from the time the Plaintiffs became members of the LLC in December 2008, the Defendant was acting as a fiduciary of the Plaintiffs.

The two bases for liability as a fiduciary under § 523(a)(4) are fraud or defalcation. The fraud alleged in the State Court Action includes the Defendant's conduct after the loan was made and after the Plaintiffs became members of the LLC when the Defendant, as a managing member of the LLC, misappropriated the funds belonging to the LLC. (Complaint, Ex. A).

Defalcation is not raised in the State Court Action so collateral estoppel does not apply to this cause of action. Defalcation is not defined in the Bankruptcy Code; however, the Second Circuit has stated that it "requires a showing of conscious misbehavior or extreme recklessness – a showing akin to the showing required for scienter in the securities law context." *Estate of Denton v. Hyman (In re Hyman)*, 502 F.3d 61, 68 (2d Cir. 2007). The defalcation standard requires a "degree of fault 'closer to fraud, without the necessity of meeting a strict specific intent requirement.'" *Hyman*, 502 F.3d at 68. However, a culpable mental state on the part of the defendant is required. *Id*. at 64, 69.

At trial, the Defendant acknowledged that the Operating Agreement provides that the purpose of the LLC was to own and operate the Property. (Defendant Trial Tr., 44). With respect to the funds loaned by the Plaintiffs, the Defendant claimed he had no knowledge regarding how these funds were used other than to state that a small portion was used for architect fees related to the LLC. (Defendant Trial Tr. at p. 54). The record reflects that of the $150,000 loaned by the Plaintiffs, $145,000 was transferred to a bank account for Iron Equities within days of clearing the account for the LLC and then $135,000 of the $145,000 was transferred to a bank account for 23-123rd Street LLC. These transfers took place while the Defendant, who was a managing member of the LLC, owed a fiduciary duty to the Plaintiffs.

The Court finds that the Defendant's conduct amounted to defalcation while acting in a fiduciary capacity with respect to the Plaintiffs. As a managing member of the LLC, the

Defendant had a continuing obligation to its members to provide honest and accurate information regarding the loan proceeds and the use thereof. It defies credulity that the Defendant was unaware that the loan proceeds were transferred from the LLC to Flatiron Equities, in which the Defendant was a co-owner. The Defendant's professed ignorance regarding the subsequent transfer of the loan proceeds to 23-123rd Street LLC, another entity in which he held an ownership interest, also lacks the ring of truth. While the Defendant testified that there was a point in time where he knew that the LLC had no hope of purchasing the Property and Mr. Enbar could not be reached, the Defendant waited for two months before disclosing the true facts regarding the misuse of the loan proceeds. This conduct reflects culpability and is inconsistent with a finding that the Defendant maintained his fiduciary duties to the Plaintiffs.

Under these circumstances, the misuse of the loan proceeds gives rise to a non-dischargeable debt under § 523(a)(4) in the amount that the loan proceeds were transferred to a third party. For these reasons, the Defendant owes a non-dischargeable

debt to the Plaintiffs in the amount of $145,000. This lesser amount is included in the judgment debt which is non-dischargeable under section 523(a)(2)(A).

## Conclusion

The judgment debt from the State Court Action is non-dischargeable under § 523(a)(2)(A). In addition, the Defendant has a non-dischargeable liability to the Plaintiffs under § 523(a)(4) based on the misuse of the loan proceeds in the amount of $145,000. A judgment consistent with this memorandum decision shall be entered forthwith.



Dated: Central Islip, New York
December 16, 2021

Robert E. Grossman
United States Bankruptcy Judge